PER CURIAM.
The Florida Bar has filed a petition asking the Court to change the references to the Bar’s address listed in the Rules Regulating the Florida Bar. We have jurisdiction.[1] Art. V, § 15, Fla. Const.; R. Reg. Fla. Bar 1-12.1.
Effective April 22, 2003, the address of the Bar’s headquarters offices was changed from the Apalachee Parkway address to 651 East Jefferson Street, Tallahassee, Florida 32399-2300. Consistent with the address change, we amend the following Rules Regulating The Florida Bar to reflect the new address: Rules 3-7.10(b)(1) & (l )(2), Reinstatement and Readmission Procedures; 5-1.2(c)(4), Trust Accounting Records and Procedures; 6-1.2, Public Notice; 9-2.2(b)(ll), Form and Content of Plan Application; 10-9.1(b), Procedures for Issuance of Advisory Opinions on the Unlicensed Practice of Law. As reflected in the appendix to this opinion, new language is indicated by underscoring; deletions are indicated by struck-through type. The amendments shall take effect immediately upon the release of this opinion.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
APPENDIX
RULE 3-7.10 REINSTATEMENT AND READMISSION PROCEDURES
(a) Reinstatement; Applicability. An attorney who has been suspended or placed on the inactive list for incapacity not related to misconduct may be reinstated to membership in The Florida Bar pursuant to this rule. The proceedings under this rule are not applicable to suspension for nonpayment of membership fees.
(b) Petitions; Form and Contents.
(1) Filing. The original petition for reinstatement and 1 copy thereof shall be in writing, verified by the petitioner, and addressed to and filed with the Supreme Court of Florida. A copy shall be served on Staff Counsel, The Florida Bar, 650 Apalachee — Parkway651 East Jefferson Street, Tallahassee, Florida 32399-2300.
(2) Form and Exhibits. The petition shall be in such form and shall be accompanied by such exhibits as provided for elsewhere in this rule. The information required concerning the petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments, disciplinary judgments, copies of income tax returns together with consents to secure original returns, occupation during suspension and information in connection therewith, financial statements, and statement of restitution of funds that were the subject matter of disciplinary proceedings. In cases seeking reinstatement from incapacity, the petition shall also include copies of all pleadings in the matter leading to placement on the inactive list and all such *501 other matters as may be reasonably required to demonstrate the character and fitness of the petitioner to resume the practice of law.
(c) Deposit for Cost. The petition shall be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors shall prescribe to ensure payment of reasonable costs of .the proceedings, as provided elsewhere in this rule.
(d) Reference of Petition For Hearing. The chief justice shall refer the petition for reinstatement to a referee for hearing; provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary or incapacity proceedings have been paid and restitution has been made.
(e) Bar Counsel. When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint bar counsel to represent The Florida Bar in the proceeding. The duties of such attorneys shall be to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or such attorneys, should be considered in passing upon the petition.
(f) Determination of Fitness by Referee Hearing. The referee to whom the petition for reinstatement is referred shall conduct the hearing as a trial, in the same manner, to the extent practical, as provided elsewhere in these rules. The matter to decide shall be the fitness of the petitioner to resume the practice of law. In determining the fitness of the petitioner to resume the practice of law, the referee shall consider whether the petitioner has engaged in any disqualifying conduct, the character and fitness of the petitioner, and whether the petitioner has been rehabilitated, as further described in this subdivision. All conduct engaged in after the date of admission to The Florida Bar shall be relevant in proceedings under this rule.
(1)Disqualifying Conduct. A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of a petitioner may constitute a basis for denial of reinstatement. The following shall be considered as disqualifying conduct:
(A) unlawful conduct;
(B) academic misconduct;
(C) making or procuring any false or misleading statement or omission of relevant information, including any false or misleading statement or omission on any application requiring a showing of good moral character;
(D) misconduct in employment;
(E) acts involving dishonesty, fraud, deceit, or misrepresentation;
(F) abuse of legal process;
(G) financial irresponsibility;
(H) neglect of professional obligations;
(I) violation of an order of a court;
(J) evidence of mental or emotional instability;
(K) evidence of drug or alcohol dependency;
(L) denial of admission to the bar in another jurisdiction on character and fitness grounds;
(M) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction; and
(N) any other conduct that reflects adversely upon the character or fitness of the applicant.
*502 (2) Determination of Character and Fitness. In addition to other factors in making this determination, the following factors should be considered in assigning weight and significance to prior conduct:
(A) age at the time of the conduct;
(B) recency of the conduct;
(C) reliability of the information concerning the conduct;
(D) seriousness of the conduct;
(E) factors underlying the conduct;
(F) cumulative effect of the conduct or information;
(G) evidence of rehabilitation;
(H) positive social contributions since the conduct;
(I) candor in the discipline and reinstatement processes; and
(J) materiality of any omissions or misrepresentations.
(3) Elements of Rehabilitation. Any petitioner for reinstatement from discipline for prior misconduct shall be required to produce clear and convincing evidence of such rehabilitation including, but not limited to, the following elements:
(A) strict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order, where applicable;
(B) unimpeachable character and moral standing in the community;
(C) good reputation for professional ability, where applicable;
(D) lack of malice and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative, or other proceeding;
(E) personal assurances, supported by corroborating evidence, of a desire and intention to conduct one’s self in an exemplary fashion in the future;
(F) restitution of funds or property, where applicable;
(G) positive action showing rehabilitation by such things as a person’s occupation, religion, or community or civic service.
Merely showing that an individual is now living as and doing those things that should be done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for persons seeking reinstatement to the bar as well as for applicants for admission to the bar because service to one’s community is an essential obligation of members of the bar.
(g) Hearing; Notice; Evidence.
(1) Notice. The referee to whom the petition for reinstatement is referred shall fix a time and place for hearing, and notice thereof shall be given at least 10 days prior to the hearing to the petitioner, to attorneys representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.
(2) Appearance. Any persons to whom notice is given, any other interested persons, or any local bar association may appear before the referee in support of or in opposition to the petition at any time or times fixed for hearings thereon.
(3) Failure of Petitioner to be Examined. For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee shall dismiss the petition for reinstatement unless good cause is shown for such failure.
(4) Summary Procedure. If after the completion of discovery bar counsel is un *503 able to discover any evidence on which denial of reinstatement may be based and if no other person provides same, bar counsel may, with the approval of the designated reviewer and staff counsel, stipulate to the issue of reinstatement, including conditions thereon. The stipulation shall include a statement of costs as provided elsewhere in these Rules Regulating The Florida Bar.
(h) Prompt Hearing; Report. The referee to whom a petition for reinstatement has been referred by the chief justice shall proceed to a prompt hearing, at the conclusion of which the referee shall make and file with the Supreme Court of Florida a report that shall include the findings of fact and a recommendation as to whether the petitioner is qualified to resume the practice of law. The referee shall file the report and record in the Supreme Court of Florida and shall serve a copy of the report and record on bar counsel and a copy of the report only on all other parties. Bar counsel shall make a copy of the record, as furnished, available to other parties upon request and payment of actual costs of reproduction.
(i) Review. Review of referee reports in reinstatement proceedings shall be in accordance with rule 3-7.7.
(j) Recommendation of Referee and Judgment of the Court. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the referee shall enter a report recommending, and the court may enter an order of, reinstatement of the petitioner in The Florida Bar; provided, however, that the reinstatement may be conditioned upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner’s misconduct that led to the petitioner’s suspension of membership in The Florida Bar or conduct that led to the petitioner’s incapacity; and further provided, however, if suspension or incapacity of the petitioner has continued for more than 3 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension or incapacity.
(k) Successive Petitions. No petition for reinstatement shall be filed within 1 year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person. In cases of incapacity no petition for reinstatement shall be filed within 6 months following an adverse judgment under this rule.
(Z) Petitions for Reinstatement to Membership in Good Standing.
(l) Availability. Petitions for reinstatement under this rule are available to members placed on the inactive list for incapacity not related to misconduct and suspended members of the bar when the disciplinary judgment conditions their reinstatement upon a showing of compliance with specified conditions.
(2) Style of Petition. Petitions shall be styled in the Supreme Court of Florida and an original and 1 copy filed therewith. A copy shall be served on Staff Counsel, The Florida Bar, 650 Apalachee Park-way651 East Jefferson Street, Tallahassee, Florida 32399-2300.
(3) Contents of Petition. The petition shall be verified by the petitioner and shall be accompanied by a written authorization to the District Director of the Internal *504 Revenue Service, authorizing the furnishing of certified copies of the petitioner’s tax returns for the past 5 years or since admission to the bar, whichever is greater. The authorization shall be furnished on a separate sheet. The petition shall have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shall also include the petitioner’s statement concerning the following:
(A) name, age, residence, address, and number and relation of dependents of the petitioner;
(B) the conduct, offense, or misconduct upon which the suspension or incapacity was based, together with the date of such suspension or incapacity;
(C) the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorney, if suspension was based upon conviction of a felony or misdemeanor involving moral turpitude;
(D) the nature of the petitioner’s occupation in detail since suspension or incapacity, with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all such relations and employments;
(E) a statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all such earnings and income were derived during said period;
(F) a statement showing all residences maintained during said period, with names and addresses of landlords, if any;
(G) a statement showing all financial obligations of the petitioner including but not limited to amounts claimed, unpaid, or owing to the Florida Bar Clients’ Security Fund or former clients at the date of filing of the petition, together with the names and addresses of all creditors;
(H) a statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients’ Security Fund and the source and amount of funds used for this purpose;
(I) a statement showing dates, general nature, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during said period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting attorneys, and trial judges;
(J) a statement as to whether any applications were made during said period for a license requiring proof of good character for its procurement; and, as to each such application, the date and the name and address of the authority to whom it was addressed and the disposition thereof;
(K) a statement of any procedure or inquiry, during said period, covering the petitioner’s standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition thereof and the name and address of the authority in possession of the record thereof;
(L) a statement as to whether any charges of fraud were made or claimed against the petitioner during said period, whether formal or informal, together with the dates and names and addresses of persons making such charges;
*505 (M) a concise statement of facts claimed to justify reinstatement to The Florida Bar;
(N) a statement showing the dates, general nature, and final disposition of every civil action wherein the petitioner, was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and
(O) a statement showing what amounts, if any, of the costs assessed against the accused attorney in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.
(4) Comments on Petition. Upon the appointment of a referee and bar counsel, copies of the petition shall be furnished by the bar counsel to local board members, local grievance committees, and to such other persons as are mentioned in this rule. Persons will be asked to direct their comments to bar counsel. The proceedings and finding of the referee shall relate to those matters described in this rule and also to those matters tending to show the petitioner’s rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.
(5) Costs Deposit. The petition shall be accompanied by a deposit for costs of $500.
(m) Costs.
(1)Taxable Costs. Taxable costs of the proceedings shall include only:
(A)' investigative costs, including travel and out-of-pocket expenses;
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including the petitioner if acting as counsel; and
(I) an administrative fee in the amount of $750 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and absent an abuse of discretion the referee’s award shall not be reversed.
(3) Assessment of Bar Costs. The costs incurred by the bar in any reinstatement case may be assessed against the petitioner unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.
(4) Assessment of Petitioner’s Costs. The referee may assess the petitioner’s costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.
(n) Readmission; Applicability. A former member who has been disbarred or whose petition for disciplinary resignation has been accepted may be admitted again only upon full compliance with the rules and regulations governing admission to the bar. No application for readmission following disbarment or disciplinary resignation may be tendered until such time as all restitution and disciplinary costs as may
*506 have been ordered or assessed have been paid together with any interest accrued.
(1) Readmission After Disbarment. Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period of time as the-court might determine in the disbarment order. An order of disbarment that states the disbarment is permanent shall preclude readmission to The Florida Bar.
(2) Readmission, After Disciplinary Resignation. In the case of a disciplinary resignation, no readmission application may be filed until 3. years after the date of the order of the Supreme Court of Florida that accepted such disciplinary resignation of such additional time as the attorney may have stated in a petition for disciplinary resignation. No application for readmission may be filed until all costs in disciplinary cases that were dismissed because of the disciplinary resignation have been paid by the applicant for readmission. If an attorney’s petition for disciplinary resignation states that it is without leave to apply for readmission, such condition shall preclude any readmission;.
RULE 5-1.2 TRUST ACCOUNTING RECORDS AND PROCEDURES
(a) Applicability. The provisions of these rules apply to all trust funds received of disbursed by members of The Florida Bar in the course of their professional practice of law as members of The Florida Bar except special trust funds received or disbursed by an attorney as guardian, personal representative, receiver, or in a similar capacity such as trustee under a specific trust document where the trust funds are maintained in a segregated special trust account and not the general trust account and wherein this special trust position has been created, approved, or sanctioned by law or an order of a court that has authority or duty to issue orders pertaining to maintenance of such special trust account. These rules shall apply to matters wherein a choice of laws analysis indicates that such matters are governed by the laws of Florida. '
(b) Minimum Trust Accounting Records. The following are the minimum trust accounting records that shall be maintained:
(1) Á separate bank or savings and loan association account or accounts in the name of the lawyer or law firm and clearly labeled and designated as a “trust account.”
(2) Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book,- clearly identifying:
(A)the date and source of all trust funds received; and
,. (B) the client or matter for which the funds were received.
(3) Original canceled checks, all of which must be numbered consecutively, or, if the financial institution wherein the trust account is maintained does not return the original checks, copies thereof, as provided by the financial institution.
(4) Other documentary support for all disbursements and transfers from the trust account.
(5) A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:
(A) the identification of the client or matter for which the funds were received, disbursed, or transferred;
(B) the date on which all trust funds were received, disbursed, or transferred;
(C) the check number for all disbursements; and
*507 (D) the reason for which all trust funds were received, disbursed, or transferred.
(6) A separate file or ledger with an individual card or page for each client or matter, showing all individual receipts, disbursements, or transfers and any unex-pended balance, and containing:
(A) the identification of the client or matter for which trust funds were received, disbursed, or transferred;
(B) the date on which all trust funds were received, disbursed, or transferred;
(C) the check number for all disbursements; and
(D) the reason for which all trust funds were received, disbursed, or transferred.
(7) All bank or savings and loan association statements for all trust accounts.
(c)Minimum Trust Accounting Procedures. The minimum trust accounting procedures that shall be followed by all members of The Florida Bar (when a choice of laws analysis indicates that the laws of Florida apply) who receive or disburse trust money or property are as follows:
(1)The lawyer shall cause to be. made monthly:
(A) reconciliations of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits -in transit, outstanding checks identified by date and check number, and any other items necessary to reconcile the balance per bank with the balance per the checkbook and the cash receipts and disbursements journal; and
(B) a comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the 2 totals and reasons therefor.
(2) At least annually, the lawyer shall prepare a detailed listing identifying the balance of the unexpended trust money held for each client or matter.
(3) The above reconciliations, comparisons, and listing shall be retained for at least 6 years.
(4) The lawyer or law firm shall authorize and request any bank or savings and loan association where the lawyer is a signatory oh a trust account to notify Staff Counsel; The Florida Bar,- 65Q-Apalahhee Parkway651 East Jefferson Street, Tallahassee, Florida 32399-2300, in the event any trust check is returned due to insufficient .funds or uncollected funds, absent bank error.
(5) The lawyer shall file with The Florida Bar between June 1 and August 15 of eacli'year a trust accounting certificate showing compliance with these rules on a form approved by the board of governors.
(d) Record Retention. A lawyer or law firm that receives and disburses client or third party funds or property shall maintain the records required by this chapter for 6 years subsequent to the final conclusion of each representation in which the trust funds or property were received.
(e) Audits. Any of the following shall be cause for The Florida Bar to order an audit of a trust account:
(1) failure to file the trust account certificate required by rule 5 — 1.2(c)(5);
(2) return of a trust account check for insufficient funds or for uncollected funds, absent bank error;
(3) filing of a petition for creditor relief on behalf of an attorney;
(4) filing of felony charges against an attorney;
*508 (5) adjudication of insanity or incom-’ petence or hospitalization of the attorney under The Florida Mental Health Act;
(6) filing of a claim against the attorney with the Clients’ Security Fund;
(7) when requested by a grievance committee or the board of governors; or
(8) upon court order.
(f) Cost of Audit. Audits conducted in any of the circumstances enumerated in this rule shall be at the cost of the attorney audited only when the audit reveals that the attorney was. not in substantial compliance with the trust accounting requirements. It shall be the obligation of any attorney who is being audited to produce all records and papers concerning property and funds held in trust and to provide such explanations as may be required for the audit. Records of general accounts are not required to be produced except to verify that trust money has not been deposited thereto. If it has been determined that trust money has been deposited into a general account, all of the transactions pertaining to any firm account will be subject to audit.
(g) Failure to Comply With Subpoena.
(1) Members of the bar are under an obligation to maintain trust accounting records as required by these rules and, as a condition of the privilege of practicing law in Florida, may not assert any privilege personal to the lawyer that may be applicable to production of same in these disciplinary proceedings.
(2) Notice of noncompliance with a subpoena may be filed with the Supreme Court of Florida only if a grievance committee or a referee shall first find that no good cause exists for failure to comply. A grievance committee or referee shall hear the issue of noncompliance and issue findings thereon within 30 days of the request for issuance of the notice of noncompliance.
(3) After notice is filed with the Supreme Court of Florida by The Florida Bar that a member of the bar has failed to fully comply with a properly issued subpoena directing the production of any trust accounting records that are required by these rules, unless good cause for the failure to comply is shown, the member may be suspended from the practice of law in Florida, by order of the Supreme Court of Florida, until such time • as the member fully complies with the subpoena and/or until further order of the court.
(4) Any member subject to suspension under this rule may petition the court, within 10 days of the fifing of the notice, to withhold entry of the order of suspension or at any time after entry of an order of suspension may petition the court to terminate or modify the order of suspension. If the court determines it necessary to refer the petition to terminate or modify the suspension to a referee for receipt of evidence, the referee proceedings shall be conducted in the same manner as proceedings before a referee on a petition to withhold, terminate, or modify an order of emergency suspension, as elsewhere provided in these rules.
Comment
These rules shall apply to matters wherein a choice of laws analysis indicates that such matters are governed by the laws of Florida.
A lawyer must hold property of others with the care required of a professional fiduciary. This chapter requires maintenance of a bank or savings and loan association account, clearly- labeled as a trust account and in which only client or third party trust funds are held.
*509 Securities should be kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances.
All property that is the property of clients or third persons should be kept separate from the lawyer’s business and personal property and, if money, in 1 or more trust accounts, unless requested otherwise in writing by the client. Separate trust accounts may be warranted when administering estate money or acting in similar fiduciary capacities.
Lawyers often receive funds from third parties from which the lawyer’s fee will be paid. If there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid. However, a lawyer may not hold funds to coerce a client into accepting the lawyer’s contention. The disputed portion of the funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be promptly distributed.
Third parties, such as a client’s creditors, may have just claims against funds or other property in a lawyer’s custody. A lawyer may have a duty under applicable law to protect such third party claims against wrongful interference by the client and, accordingly, may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party, and, where appropriate, the lawyer should consider the possibility of depositing the property or funds in dispute into the registry of the applicable court so that the matter may be adjudicated.
The obligations of a lawyer under this chapter are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction.
Each lawyer is required to be familiar with and comply with Rules Regulating Trust Accounts as adopted by the Supreme Court of Florida.
Money or other property entrusted to a lawyer for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of a lawyer are not subject to counterclaim or setoff for attorney’s fees, and a refusal to account for and deliver over such property upon demand shall be a conversion. This does not preclude the retention of money or other property upon which a lawyer has a valid lien for services or to preclude the payment of agreed fees from the proceeds of transactions or collections.
Advances for fees and costs (funds against which costs and fees are billed) are the property of the client or third party paying same on a client’s behalf and are required to be maintained in trust, separate from the lawyer’s property. Retainers are not funds against which future services are billed. Retainers are funds paid to guarantee the future availability of the lawyer’s legal services and are earned by the lawyer upon receipt. Retainers, being funds of the lawyer, may not be placed in the client’s trust account.
The test of excessiveness found elsewhere in the Rules Regulating The Florida Bar applies to all fees for legal services including retainers, nonrefundable retainers, and minimum or flat fees.
*510 RULE 6-1.2 PUBLIC NOTICE
The Florida Bar may cause a public notice to be promulgated where and when it deems necessary, including, for example, telephone directory yellow pages, in substantially the following form:
NOTICE
FOR THE GENERAL INFORMATION OF THE PUBLIC
ATTORNEYS INDICATING “BOARD CERTIFIED” OR “SPECIALIST” HAVE BEEN CERTIFIED BY THE FLORIDA BAR AS HAVING SPECIAL KNOWLEDGE, SKILLS, AND PROFICIENCY IN THEIR AREAS OF PRACTICE.
ALL PERSONS ARE URGED TO MAKE THEIR OWN INDEPENDENT INVESTIGATION AND EVALUATION OF ANY ATTORNEY BEING CONSIDERED.
This notice published by The Florida Bar Board of Legal Specialization and Education, Telephone 850/561-5600, 650 Apa-lachee Parkway651 East Jefferson Street. Tallahassee, Florida 32399-2300.
RULE 9-2.2 FORM AND CONTENT OF PLAN APPLICATION
A plan application shall consist of the following:
(a) Assurances by the Managing Attorney to the Bar. The managing attorney shall make the following assurances to the bar, in writing, executed on a form approved and adopted for use for such purpose by the committee:
(1)to exercise every reasonable effort in order to assure that the plan is operated in an ethical manner and is in compliance with the Rules Regulating The Florida Bar;
(2) to have a professional liability insurance policy issued in favor of the managing attorney in an amount not less than $100,000, and to attach to this form a copy of the declarations page of said policy;
(3) to take any and all steps reasonable and necessary in order to assure that there are a sufficient number of plan attorneys available in order to be able to adequately and properly perform the legal services to be provided under the plan;
(4) to file with the committee written notice of any proposed change to be made in any item described in the agreement described in subdivision (b).
(5) to not implement any proposed change described in subdivision (a)(4) without first obtaining the approval of the board;
(6) to file with the committee written notice of the termination of and cessation of operations by the plan within 10 days of such occurrence;
(7) to file with the committee a renewal request form approved and adopted for use for such purpose by the committee, as more particularly described in rule 9-2.5; and
(8) if applicable, to affirm and verify that the managing attorney and any specified members of the managing attorney’s law firm shall be the sole plan attorney(s) under the plan.
Upon such affirmation and verification, the filing requirement of the agreement described in subdivision (c) shall be waived, and the managing attorney and any such specified members of the managing attorney’s law firm shall each make an affirmative statement that the managing attorney and all such specified attorneys shall complete any and all legal services undertaken for and on behalf of a plan participant to the extent of the benefits *511 provided under the plan in the event of the termination of the plan.
(b) Agreement by and between Managing Attorney and Sponsor. The managing attorney and sponsor shall both execute a written agreement which shall include, but not be limited to, the following:
(1) a detailed definition of who shall constitute a plan participant under the plan;
(2) a detailed description of any and all of the legal services to be provided under the plan;
(3) a detailed description of any and all of the legal services to be excluded under the plan;
(4) a detailed description of the geographic area in which the legal services shall be performed under the plan;
(5) the amount and method of payment of the fees to be paid to the managing attorney by the sponsor under the plan;
(6) the amount and method of payment of the fees to be paid to the managing attorney by the plan participants under the plan;
(7) a detailed description of the method of review and resolution of disputes and grievances arising under the plan;
(8) a method of termination of the agreement by either the managing attorney or the sponsor;
(9) an affirmative statement that the plan participant is the client under the plan and that the sponsor will have no influence whatsoever over the attorney-client relationship established thereunder;
(10) an affirmative statement that the plan participant is free to use a non-plan attorney, either at the plan participant’s own expense or with reimbursement to be provided by either the managing attorney or the sponsor;
(11) a statement informing the plan participant that the plan participant may file a complaint with Staff Counsel, The Florida Bar, 65Q-ApaIachee -Ra-r-kway651 East Jefferson Street, Tallahassee, Florida 32399-2300.
(12) A disclaimer announcement, as follows: “The Florida Bar does not guarantee in any way the success of the plan and gives no assurances of the quantity or quality of the legal services to be provided thereunder. Total responsibility for the delivery of legal services under the plan rests solely and entirely with the sponsor and the managing attorney and the plan attorneys.”
(c) Agreement by and between Managing Attorney and Plan Attorney. The managing attorney and plan attorney shall both execute a written agreement which shall include, but not be limited to, the following:
(1) an assurance by the plan attorney to have a professional liability insurance policy issued in favor of the plan attorney in an amount not less than $100,000, and to attach to this agreement a copy of the declarations page of said policy;
(2) an affirmative statement that the plan attorney shall complete any and all legal services undertaken for and on behalf of a plan participant to the extent of the benefits provided under the plan in the event of the termination of the plan;
(3) a detailed description of any and all of the legal services to be performed by the plan attorney under the plan;
(4) a detailed description of the geographic area in which the legal services shall be performed by the plan attorney under the plan;
*512 (5) the amount and method of payment of the fees to be paid to the plan attorney by the managing attorney under the plan;
(6) the amount and method of payment of the fees to be paid to the plan attorney by the plan participants under the plan;
(7) a detailed description of the method of review and resolution of disputes and grievances arising under the plan;
(8) a method of termination of the agreement by either the managing attorney or the plan attorney; and
(9) an affirmative statement that the plan participant is the client of the plan attorney and that neither the sponsor nor the managing attorney will have any influence whatsoever over the attorney-client relationship established by and between the plan participant and the plan attorney thereunder.
(d) Other Documents. Pursuant to the authority contained in rule 9-3.3, the committee, in its discretion, may require other documents to be included in or filed with the plan application.
(e) Application Fee. Each plan application shall be accompanied by an application fee in the amount of $50 made payable to The Florida Bar.
RULE 10-9.1 PROCEDURES FOR ISSUANCE OF ADVISORY OPINIONS ON THE UNLICENSED PRACTICE OF LAW
(a)Definitions.
(1) Committee. The standing committee as constituted according to the directives contained in these rules.
(2) Petitioner. An individual or organization seeking guidance as to the applicability, in a hypothetical situation, of the state’s prohibitions against the unlicensed practice of law.
(3) Public Notice. Publication in a newspaper of general circulation in the county in which the hearing will be held and in The Florida Bar News.
(4) Court. The Supreme Court of Florida (or such other court in the state of Florida as the supreme court may designate).
(b) Requests for Advisory Opinions. A petitioner requesting a formal advisory opinion concerning activities that may constitute the unlicensed practice of law shall do so by sending the request in writing addressed to The UPL Department, The Florida Bar, 650 Apalachee Parkway651 East Jefferson Street, Tallahassee, Florida 32399-2300. The request for an advisory opinion shall state in detail all operative facts upon which the request for opinion is based and contain the name and address of the petitioner. The request shall be reviewed by UPL staff counsel. If the request complies with the requirements of the rule as stated herein, the request will be placed on the agenda for the next scheduled meeting of the committee. At that meeting, the committee will determine whether to accept the request, such determination being within the discretion of the committee. Should the committee accept the request, a public hearing as provided in rule 10 — 9.1(f) shall be scheduled.
(c) Limitations on Opinions. No opinion shall be rendered with respect to any case or controversy pending in any court or tribunal in this jurisdiction and no informal opinion shall be issued except as provided in rule 10 — 9.1(g)(1).
(d) Services of Voluntary Counsel. The committee shall be empowered to request and accept the voluntary services of a person licensed to practice in this state when the committee deems it advisable to receive written or oral advice regarding the question presented by the petitioner.
*513 (e) Conflict of Interest. Committee members shall not participate in any matter in which they have either a material pecuniary interest that would be affected by a proposed advisory opinion or committee recommendation or any other conflict of interest that should prevent them from participating. However, no action of the committee will be invalid where full disclosure has been made and the committee has not decided that the member’s participation was improper.
(f) Notice, Appearance, and Service.
(1) At least 30 days in advance of the committee meeting at which a hearing is to be held with respect to a potential advisory opinion, the committee shall give public notice of the date, time, and place of the hearing, state the question presented, and invite written comments on the question. On the announced date the committee shall hold a public hearing at which any person affected shall be entitled to present oral testimony and be represented by counsel. Oral testimony by other persons may be allowed by the committee at its discretion. At the time of or prior to the hearing any other person shall be entitled to file written testimony on the issue before the committee. Additional procedures not inconsistent with this rule may be adopted by the committee.
(2) The committee shall issue either a written proposed advisory opinion, a letter that declines to issue an opinion, or an informal opinion as provided in rule 10-9.1(g)(1). No other form of communication shall be deemed to be an advisory opinion.
(3) A proposed advisory opinion shall be in writing and shall bear a date of issuance. The proposed opinion shall prominently bear a title indicating that it is a proposed advisory opinion and a disclaimer stating that it is only an interpretation of the law and does not constitute final court action. The committee shall arrange for the publication of notice of filing the proposed advisory opinion and a summary thereof in The Florida Bar News within a reasonable time. Interested parties shall be furnished a copy of the full opinion upon request.
(g)Service and Judicial Review of Proposed Advisory Opinions.
(1) In the case of any proposed advisory opinion in which the standing committee concludes that the conduct in question is not the unlicensed practice of law, it shall decide, by a vote of a majority of the committee members present, either to publish the advisory opinion as provided in rule 10 — 9.1(f)(3) as an informal advisory opinion, or to file a copy of the opinion with the court as provided in rule 10-9.1(g)(2).
(2) In the case of any proposed advisory opinion in which the standing committee concludes that the conduct in question constitutes or would constitute the unlicensed practice of law, the committee shall file a copy of the opinion and all materials considered by the committee in adopting the opinion with the clerk of the court. The proposed advisory opinion, together with notice of the filing thereof, shall be fmv nished by certified mail to the petitioner.
(3) Within 30 days of
(4) Upon the expiration of the time to file objections, briefs, and replies thereto, the court shall review the advisory opinion, regardless of whether any such objections are in fact made, together with any briefs or objections filed in support of or in opposition to such opinion. Upon review, it shall approve, modify, or disapprove the advisory opinion, and the ensuing opinion shall have the force and effect of an order of the court and be published accordingly. There shall be no further review of the *514 opinion except as granted by the court in its discretion, upon petition to the court.

. In light of the need for the expeditious adoption of these amendments, we waive the rule 1-12.1 review by the Board of Governors and notice requirements. See R. Reg. Fla. Bar. 1-12. l(i).